UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY SINICO, | ) | |
| | ) | |
| Petitioner, | ) | No. 1:19-CV-07738 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CAMERON WATSON, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

Timothy Sinico has filed a petition for writ of habeas corpus, 28 U.S.C. § 2254, challenging his 2013 convictions for first-degree murder and attempted armed robbery, and the resulting 50-year prison sentence.[1] His three claims for relief are all based on ineffective assistance of counsel. R. 1, Habeas Pet.[2] The State asks to dismiss the petition as time-barred, 28 U.S.C. § 2244(d), and alternatively, to deny the petition on the merits. R. 5, Resp. For the reasons explained in this opinion, the petition is dismissed as untimely and, alternatively, denied on the merits too. The Court will not issue a certificate of appealability.

## I. Background

### A. Facts

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct,

---

[1]This Court has jurisdiction under 28 U.S.C. § 2241.
[2]Citations to the docket are noted as "R.", followed by the docket entry.

unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Because Sinico has not presented clear and convincing evidence to rebut this presumption, this Court adopts the facts set forth by the Illinois Appellate Court on direct review in *People v. Sinico*, 2015 WL 4040408 (Ill. App. Ct. 2015).

This case arises from the murder of Adrian Thompson in a Chicago alley on April 23, 2009. 2015 WL 4040408 ¶¶ 2–23. On that day, Darnell Benson spent the afternoon at his grandmother's house and in her garage in the alley behind Austin Boulevard, with his girlfriend Tiarra Smith and their friend Asaundra Washington. *Id.* ¶ 4. The group smoked cannabis and listened to music. *Id.* Later in the afternoon or early evening, Petitioner Timothy Sinico and Montrell Banks joined the group. *Id.* ¶¶ 5, 11. The group smoked, drank beer, and listened to music together in Benson's garage and the alley. *Id.* ¶ 11. According to Benson, Sinico asked for some cannabis, but Benson refused and told him to find the drug somewhere else. *Id.* ¶ 12. Sinico called Thompson, who also was a seller of cannabis. *Id.* At some point that day, Benson heard Sinico say that he planned to rob Thompson. *Id.* He also saw Banks playing with a gun. *Id.* ¶¶ 12–13. Smith, too, saw Banks playing with a gun, and she heard Banks say he planned to rob Thompson, and heard Sinico agree to help him. *Id.* ¶ 20.

Thompson arrived alone in the alley later that evening. 2015 WL 4040408 ¶ 13. Banks and Sinico got into Thompson's car, with Banks in the back seat and Sinico in the passenger seat. *Id.* Benson heard Banks say, on his way to the car, "I'm fitting to get this n***, foe." *Id.* The three sat in the car and a cannabis deal took place. *Id.*

2

Then Banks got out of the car, pointed his gun at Thompson, and made some verbal threats. *Id.* Sinico was still in the car and had his hands up. *Id.* Thompson tried to reverse his car, and Banks shot him. *Id.* Sinico jumped out of the moving car and shouted, "He dead, foe. He dead. And damn, you almost shot me." *Id.* ¶ 14. Then he and Banks jumped into Banks's car and drove away. *Id.*

According to Benson, Sinico called him later that night, saying that Sinico and Banks had only gotten two bags of cannabis from Thompson, and explained that the two men had been "gathering alibis" on their way home from the alley. 2015 WL 4040408 ¶ 16.

## B. Procedural History

A state court jury found Timothy Sinico guilty of first-degree murder on an accountability theory[3] and of attempted armed robbery. *Sinico*, 2015 WL 4040408 ¶ 2. Sinico was sentenced to 46 years in prison for the murder and four additional years for the attempted armed robbery. *Id.* He appealed on five separate grounds, but the Illinois Appellate Court affirmed the conviction and sentence. *Id.* The Illinois

---

[3]The jury received Illinois Pattern Jury Instruction Criminal No. 5.03 ("Accountability"), which explains accountability as follows:

> A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of an offense.

> The word "conduct" includes any criminal act done in furtherance of the planned and intended act. Illinois Pattern Jury Instruction, Criminal, No. 5.03 (4th ed.2000)

*People v. Sinico*, 2015 WL 4040408 (Ill. App. 2015), ¶ 47.

3

Supreme Court denied his petition for leave to appeal. *People v. Sinico*, 42 N.E.3d 374 (Ill. 2015).

Sinico then filed a petition for post-conviction relief under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122 *et seq.*, in state court. Habeas Pet. ¶ 7. The state court denied the petition, and Sinico appealed. *Id.* The Illinois Appellate Court affirmed the denial of the petition. *Sinico*, 2015 WL 4040408. For reasons that will be discussed in more detail later, Sinico sought an extension of time to file a petition for leave to appeal to the Illinois Supreme Court. Habeas Pet. ¶ 9. The Illinois Supreme Court granted the extension but ultimately denied Sinico's petition on May 22, 2019, and Sinico did not seek a writ of certiorari from the U.S. Supreme Court. *Id.* ¶¶ 9–10. He filed this federal habeas petition on November 22, 2019. Habeas Pet.

### III. Analysis

### A. Timeliness

The first question is whether Sinico has timely filed the habeas petition. He asks the Court to apply the statutory and equitable tolling to excuse his otherwise late filing. Habeas Pet. at 3. Unfortunately for Sinico, neither form of tolling renders the petition timely filed.

To start, the § 2254 petition is governed by the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. *See Lindh v. Murphy*, 521 U.S. 320, 322 (1997); *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). Generally speaking, under AEDPA, a state prisoner seeking collateral review in federal court must file the habeas petition within

4

one year of the date on which the state court judgment becomes final. 28 U.S.C. § 2244(d)(1). In this case, the parties agree that Sinico's habeas clock began running on May 31, 2016, the date on which the U.S. Supreme Court denied his certiorari petition on direct appeal. Habeas Pet. at 4; Resp. at 4–5. This was "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The clock started then, but the clock stops ticking for any time during which "a properly filed application for State post-conviction or other collateral review … is pending." § 2244(d)(2). This is called statutory tolling. Separate from that form of tolling, a petitioner is also entitled to equitable tolling "if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (cleaned up).[4]

At issue is whether the time between November 28, 2018, and February 4, 2019, should be tolled. To back up, the parties agree that Sinico's habeas clock started running on May 31, 2016, and stopped at day 181, on November 28, 2016, when Sinico filed a state court petition for post-conviction relief. Habeas Pet. at 4–5; Resp. at 4–5. During the pendency of the state petition, Sinico was entitled to statutory tolling for his federal habeas petition under 28 U.S.C. § 2244(d)(2). Remember, however, that 181 days had already ticked off the limitations clock. And from May 22, 2019 (when

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

the Illinois Supreme Court denied leave to appeal) and November 22, 2019 (when this federal petition was filed), another 184 days ran on the limitations clock. That is exactly 365 days—one year—counted against the limitations period. So if even one day ticked off the limitations clock after the Illinois Appellate Court decided against Sinico on November 28, 2018, Habeas Pet. ¶ 8, then the federal petition was filed too late.

Under Illinois state rules, Sinico had 35 days to file a petition for leave to appeal the appellate court decision to the Illinois Supreme Court. Ill. Sup. Ct. Rule 315(b). In other words, he should have filed his petition by January 3, 2019—but he did not. Habeas Pet. at 6. Instead, on February 4, 2019, new counsel for Sinico filed an extension motion to file the petition for leave to appeal. Habeas Pet. ¶ 9. The extension was granted, and the parties agree that the time between February 4 (when counsel filed the extension motion) and May 22, 2019 (when the Illinois Supreme Court denied the petition for leave to appeal) is also subject to statutory tolling. Resp. at 5. This leaves the debate over whether tolling applies to the period between November 28, 2018 (when the Illinois Appellate Court affirmed the denial of the state petition), and February 4, 2019 (when counsel filed the extension motion).

Sinico argues that this gap in time should be subject to equitable tolling because his then-attorney, Joshua Sachs, suffered a sudden, severe illness that prevented him from continuing to represent Sinico. Habeas Pet. 5–9.[5] Sachs was

---

[5] Sinico also argues that statutory tolling should apply to the 35 days between November 28, 2018 and January 3, 2019, the original deadline to file the petition for leave to appeal.

hospitalized and heavily medicated for a recurrence of cancer and complications from treatment, and Sachs did not immediately learn of the appellate court's decision affirming the denial of Sinico's state petition. *Id.* During the time that Sachs was out of commission, Sinico and his parents were unable to reach the lawyer despite their repeated efforts. *Id.* at 8. Sachs finally contacted Sinico's father, Louis Sinico, on December 20, 2018, and informed him that Sachs could no longer work on Sinico's case. *Id.* Louis asked for a referral, which Sachs did not immediately give. *Id.* Louis nevertheless began contacting other possible counsel for his son. *Id.* In December 2018, Sachs asked current counsel, Jon Stromsta, to take over the case, and Sachs also arranged for Sachs's information technology consultant to help transfer the case files. *Id.* at 9. Also in December, Sachs put Louis in touch with Stromsta, and on January 2, 2019, Louis contacted Stromsta. *Id.* at 9. The Sinicos retained Stromsta to file a petition for leave to appeal, as well as an extension motion to file the petition for leave. *Id.* Stromsta filed these on February 4, 2019, less than one month after being retained. *Id.* The State does not dispute this version of events. Resp. at 6. Rather, the State contends that, although Sachs's illness certainly excused the timely filing of the petition to the Illinois Supreme Court, it does not excuse the delay in this *federal* habeas filing. *Id.*

On these facts, Sinico is not entitled to equitable tolling that would excuse the late federal habeas filing. The State has correctly identified the Seventh Circuit case

---

Habeas Pet. at 10. As explained below, whether or not those days are tolled does not change the outcome of this case, so this Court need not decide the issue.

very similar to this one: *Griffith v. Rednour,* 614 F.3d 328 (7th Cir. 2010). In *Griffith*, the petitioner missed, by two weeks, the deadline to file a petition for leave to appeal the denial of postconviction relief to the Illinois Supreme Court. *Griffith*, 614 F. 3d at 329. Much like Sinico, Griffith had the misfortune of having his attorney fall ill at the critical time. *Id.* at 331. When the attorney recovered, he requested and was granted an extension of time to file the petition for leave to appeal. *Id.* The Illinois Supreme Court ultimately denied the petition, and Griffith's attorney filed a federal habeas petition exactly one year later. *Id.* at 329.

The Seventh Circuit rejected the application of tolling, in reasoning that applies full force to Sinico's case, for the two-week period between Griffith's deadline to file a petition for leave to appeal and the date that he filed his extension motion. *Griffith*, 614 F. 3d at 330–31. The petition could not be considered "pending" before anything was filed at the Illinois Supreme Court, so statutory tolling did not apply. *Id.* at 330. Nor did equitable tolling apply. The Seventh Circuit reasoned that there was no connection between the attorney's illness at the time the petition was originally due, and the belated habeas filing over one year later. *Id.* at 331. The state court could—and did—choose to grant an extension of time to file the petition for leave to appeal, but this did not affect the federal habeas clock. *Id.* As the Seventh Circuit explained, "An illness that justifies a belated state filing does not automatically justify an untimely federal filing more than a year later." *Id.* Put another way, there was no particular reason—at least not one that would justify equitable tolling—to wait more than another year to file the federal petition. Moreover, an attorney's mistake

8

in calculating the period when a petition for state post-conviction relief was pending did not count as an "extraordinary circumstance" that would justify equitable tolling in its own right. *Id*. The same principles apply here against Sinico's plea for equitable tolling. Yes, Sachs's unfortunate medical difficulties explained why the petition for leave to appeal to the Illinois Supreme Court was not filed on time. But after May 22, 2019 (when the Illinois Supreme Court denied leave to appeal), why did Sinico wait another 184 days to file the federal petition? No reason is offered.

Sinico does offer an argument to distinguish his case from *Griffith*, but the argument misses the point. Sinico argues that equitable tolling should apply because Sachs essentially abandoned him, and because Sachs's illness forced another attorney, Stromsta, to take over the case. R. 20, Reply at 6–8. Even if Sachs could be said to have abandoned his client, the difference is immaterial. In both cases, the end result was a past-deadline request to file a late petition for leave to appeal. In both cases, the extension was granted and the petition for leave to appeal was denied. Again, it is true that Sinico paints a compelling picture of the difficulties Stromsta faced when he took over the case from the ailing Sachs in early 2019, and Stromsta appeared to have acted diligently in filing the extension motion and, later, the petition for leave to appeal. Habeas Pet. 6–9; Reply 3–4. But none of that explains what obstacles prevented Sinico from filing the *federal* habeas petition on time. The apparent explanation—given that the federal petition was filed after exactly 365 days expired on the limitations clock *if* zero days during the state post-conviction stage are

9

counted—is that his counsel miscalculated the date. But miscalculation of that sort does not give rise to equitable tolling. *Griffith*, 614 F. 3d at 331.

The final question worth mentioning—though it turns out that the Court need not answer it—is whether tolling applies between a state appellate court's adverse decision and the expiration of the original deadline to file a petition for leave to appeal. To repeat, *Griffith* rejected any form of tolling for a *later* time period: the time between the original deadline for a petition for leave to appeal and the date that an extension motion was filed. *Griffith*, 614 F. 3d at 330–31. But what about the time between the Appellate Court's decision and the expiration of the original deadline to file a petition for leave to appeal? *Griffith* does not squarely answer the question. Sinico argues that this time period—in his case, between November 28, 2018 and January 3, 2019—is subject to statutory tolling (or equitable tolling in the alternative, as discussed earlier). Habeas Pet. at 10. The State, on the other hand, argues this time should not be tolled. Resp. at 5. Ultimately, it makes no difference whether the time between November 28, 2018, and January 3, 2019, is tolled or not. If those 35 days are not tolled, Sinico's habeas petition is late by 67 days. If those 35 days *are* tolled, the petition is still late by 31 days (because the clock was running between January 3, 2019, and February 4, 2019). Either way, it is too late. So there is no need for this Court to answer that particular question.[6]

---

[6]There also is no need to hold an evidentiary hearing to establish the facts underlying Sinico's argument that equitable tolling applies. Habeas Pet. at 11. There is no dispute over the facts Sinico has presented to explain why nothing was filed between November 28, 2018, and February 4, 2019. All those facts have been accepted as true. The flaw in Sinico's

### B. Merits

Even if Sinico had filed the federal habeas petition on time, it would fail on the merits. All of his claims are for ineffective assistance of counsel (in violation of the Sixth Amendment as incorporated against the State by the Fourteenth Amendment). Habeas Pet. at 22–38. Sinico argues that his trial counsel was constitutionally ineffective for (1) failing to impeach Darnell Benson, a key prosecution witness, with a prior inconsistent statement; (2) failing to introduce critical exculpatory telephone records; and (3) failing to request a jury instruction telling the jury to treat Benson's testimony with suspicion because he was an accomplice to the crime. *Id.* Sinico also argues that his counsel on direct appeal was constitutionally ineffective for failing to raise the jury instruction issue. *Id.* at 37–38.

To win on his ineffective-assistance claims, Sinico must show that the state court's decision was contrary to, or unreasonably applied, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court's decision is "contrary to" clearly established Supreme Court law "if it applies a rule that contradicts the governing law set forth in" Supreme Court cases, "or if it confronts a set of facts that is materially indistinguishable" from those in a Supreme Court case "but reaches a different result." *Id.* And to qualify for relief based on an "unreasonable application" of law, the petitioner must show that the "state court identified the correct" legal

---

limitations argument, as discussed earlier, is that Sinico offers no explanation for the delay in the filing the *federal* petition.

principles but applied them to the facts in a way that was "not only incorrect or erroneous but objectively unreasonable." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (cleaned up). "Even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable," and a prisoner bears the burden of showing that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (cleaned up). Appropriate deference must be given to the state court's decision, *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018), and "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

The first step is setting forth the correct legal standards for evaluating a claim of ineffective assistance of counsel. Under the Sixth Amendment, defendants have the right to effective assistance of counsel in criminal cases, *Garza v. Idaho*, 139 S. Ct. 738, 743 (2019), in both federal and state court, *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963). To establish ineffective assistance of counsel, a petitioner "must prove (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that any such deficiency was prejudicial." *Garza*, 139 S. Ct. at 744 (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88, 692 (1984)) (cleaned up). For the performance requirement, the question is whether "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. On prejudice, the petitioner must "undermine confidence in the outcome" of the trial proceedings by showing that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (cleaned up). The familiar two-element *Strickland* standard applies to appellate counsel as well as to trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

The Illinois Appellate Court correctly identified these legal standards, *People v. Sinico*, 2018 WL 6272861 ¶ 48 (Ill. App. 2018), so the remaining question is whether the state court unreasonably applied the standards to Sinico's claims. To answer this question, a federal court evaluating this type of claim must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims" and "give appropriate deference to that decision." *Wilson*, 138 S. Ct. at 1191–92 (cleaned up).

### 1. Failure to Impeach Benson

First, Sinico argues that his trial counsel fell short because counsel failed to impeach crucial prosecution witness Darnell Benson. Habeas Pet. at 22. Sinico argues that Benson should have been impeached with his pre-trial statement to two assistant state's attorneys; Benson allegedly said that Sinico never took Banks's threats of violence seriously. *Id.* at 24–27. Testimony that Sinico did not take Banks's threats seriously would have undermined the prosecution's theory of the case, which was that Sinico agreed with Banks to rob Thompson. *Id.* at 23. The proposed testimony might also have undermined the credibility of Benson, the only witness who testified to hearing Sinico say that he would rob Thompson, and the only witness who testified that Sinico told him that he spent part of the evening "gathering alibis." *Id.*

13

The biggest problem with Sinico's claim is that, according to the Appellate Court (and this Court agrees), he mischaracterizes Benson's prior statement. 2018 WL 6272861 ¶ 52. As the Illinois Appellate Court explained in describing the prior statement, "Benson said, no less than four times, that *he* never took Banks's threats seriously, but he never once said the same about defendant." *Id.* (emphasis in original). At trial, Benson testified that he *himself* did not take Banks's threats seriously, and he also testified that he and Sinico ran in the same circles. *Id.* This is the best Sinico could have hoped for in crossing on this point. There simply was no prior inconsistent statement with which to impeach Benson's trial testimony and force him to say more explicitly that *Sinico* never took Banks seriously. *Id.* What's more, even if the statement had said what Sinico proffers it said, Benson likely would not have been permitted to testify to Sinico's state of mind, because (so far as the record shows) Benson had no personal knowledge on that point. *See* Ill. S. Ct. Rule of Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). Sinico's trial counsel committed no error in doing the best that counsel could do in impeaching Benson on this part of the prior statement. Naturally, given the absence of the basis for impeachment, there also was no prejudice to Sinico from his trial counsel's performance. There is nothing unreasonable in the Illinois Appellate Court's decision on this claim. Sinico's first claim must be denied.[7]

---

[7]Sinico says that the Appellate Court rejected this claim on the grounds that it could have been raised on direct appeal. Habeas Pet. at 23. As the State points out, this is incorrect.

### 2. Phone Records

Next, Sinico argues that his trial counsel was deficient in failing to introduce evidence that Sinico never made a telephone call to Benson on the night of the murder. Habeas Pet. at 30. Benson testified that Sinico called him after the murder and admitted to getting cannabis from Thompson and "gathering alibis." *Id.* According to Sinico, his trial counsel failed to introduce phone records showing that Sinico never called Benson, but rather *Benson* called Sinico 11 times that night. *Id.* at 30–31. Also, Sinico complains that his trial counsel did not cross-examine the prosecution's expert on "historical cell site analysis," Agent Raschke. *Id.*

The Illinois Appellate Court considered this claim and reasonably rejected it on several grounds. 2018 WL 6272861 ¶¶ 54–60. First, at trial the parties stipulated that Sinico's cell phone had two numbers assigned to it: a Sprint number for regular cell phone calls, and a Nextel direct-connect number that permitted users to communicate in one-way messages as if they were using walkie-talkies. *Id.* ¶ 56. Direct-connect communications were known as "chirps," and FBI Agent Joseph Raschke testified at trial that there was no way to tell who initiated a chirp, whatever the cell phone records purported to say. *Id.* ¶¶ 56, 59. Phone records showed that there were 11 chirps between Sinico and Benson before 11 p.m. on April 23, 2009. *Id.* ¶ 58. Sinico argued on appeal to the state court—as he still argues now—that because the phone

---

Resp. at 8. In fact, the Appellate Court explicitly concluded that this particular claim could *not* have been raised on direct appeal because it depended on facts outside the trial record. WL 6272861 ¶ 50. The Appellate Court thus proceeded to address the claim on the merits. *Id.* ¶¶ 50–52.

records listed Sinico's Nextel number as the "destination" of each chirp, they proved that in fact, Benson called him. *Id.* But the Appellate Court found that Raschke's testimony refuted that assertion, because again, Raschke explained that it was not possible to tell who initiated the chirps. *Id.* ¶ 59. What's more, the Appellate Court concluded that it did not even matter who initiated the chirps, because the substance of Benson's testimony about what Sinico told him during their conversation remained unchanged and unchallenged: "Thus, even if the records were impeaching at all, their potential impeachment value was minimal at best." *Id.* ¶ 60. Thus, the Appellate Court reasoned, trial counsel's failure to use the phone records to impeach Agent Raschke did not prejudice Sinico. *Id.*

The Appellate Court's decision on this claim was reasonable. Agent Raschke explained that the "destination" designation on the Nextel records did not actually represent the direction of the walkie-talkie chirp. 2018 WL 6272861 ¶ 59. Sinico points to no reason why the state trial jury could not rationally credit Raschke on that testimony, and likewise the Illinois Appellate Court reasonably viewed the evidence in favor of the guilty verdict. With that factual premise in place, trial counsel did nothing wrong by not impeaching Raschke on the phone records, given the context of the evidence and testimony in question. (And Sinico does not develop an argument on the historical cell-site analysis.) The Illinois Appellate Court's decision is entitled to considerable deference. *Wilson*, 138 S. Ct. at 1191–92.[8] This second claim fails, too.

---

[8]In his reply brief, Sinico contends for the first time that, actually, Nextel records of chirps *do* reveal who initiated the chirp. Reply at 15. To support this assertion, and his

16

### 3. Jury Instruction on Accomplice

Finally, Sinico claims that his trial counsel was ineffective in failing to ask for an instruction that would warn the jury to view Darnell Benson's testimony with suspicion, on the basis that Benson was an accomplice to Thompson's murder. Habeas Pet. at 33–38. In support of this claim, Sinico cites all the record evidence that he believes shows that Benson should have been considered an accomplice, especially dwelling on Benson's original status as the primary murder suspect. *Id.* at 36. He also argues that his counsel on direct appeal was ineffective for failing to raise the issue on appeal. *Id.* The pattern jury instruction at issue says, "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." Illinois Pattern Jury Instructions, Criminal, No. 3.17 (4th ed. 2000). As the Illinois Appellate Court explained in rejecting this claim, "A witness is an 'accomplice' for purposes of this 'accomplice-witness instruction' if there is probable cause to believe that the witness was guilty of the offense, either as a principal or on a theory of accountability." 2018 WL 6272861 ¶ 67 (citing *People v. Caffey*, 205 Ill. 2d 52, 116 (2001)).

---

argument that his counsel's failure to cross-examine Raschke was deficient, he cites an entirely different state court opinion in a different case. *Id.* That will not work. As already explained, if Sinico wanted to challenge the facts found by the Illinois Appellate Court that affirmed his conviction (which were also the basis for the Appellate Court's decision on his petition for post-conviction relief, 2018 WL 6272861 ¶ 4), then he needed to present clear and convincing *evidence* in support of his proposed facts. *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). A citation to an unrelated case record is not evidence.

The Illinois Appellate Court reasonably concluded that the evidence at trial did not establish probable cause to believe that Benson was guilty of Thompson's murder as an accomplice (or otherwise). 2018 WL 6272861 ¶ 68. The Appellate Court acknowledged that, on cross-examination, Benson testified not only that Sinico called Thompson, but that he (Benson) also called Thompson to invite him to join the group in the alley. *Id.* ¶¶ 43, 70. But the opinion noted that there was no evidence that Benson called Thompson for any reason other than to set up a cannabis sale. *Id.* ¶ 70. It is true that Benson also saw Banks with a gun and heard him making threats. *Id.* But Benson did not take Banks seriously, and nobody testified that Benson talked with Sinico and Banks about robbing Thompson, or that Benson got into the car with Banks, Sinico, and Thompson. *Id.* ¶ 71. At best (for Sinico), there was some evidence that Benson might have helped Banks conceal the murder weapon in the aftermath, but there was no evidence that Benson helped played any role in the murder itself. *Id.* ¶ 75. The Illinois Appellate Court also considered and reasonably rejected the relevance of Benson being the police's first suspect for the murder based on its location and his early avoidance of the police. *Id.* ¶ 78. Benson ultimately contacted the police to address these suspicions and the investigation changed course, as investigations often do. *Id.* Moreover, Benson was "vigorously" impeached at trial about inconsistencies in his testimony and his motives for testifying. *Id.* ¶ 36. Against this backdrop, the Appellate Court concluded, and this Court agrees, that it was not deficient performance, nor did it prejudice Sinico, for trial counsel not to propose the accomplice jury instruction. *Id.* ¶ 79. Sinico does not, in his federal habeas petition, bring up any

18

evidence that the Appellate Court did not consider and reasonably reject as grounds for giving the accomplice jury instruction. Habeas Pet. at 36.

On the ineffectiveness of appellate counsel, as the Illinois Appellate Court explained, where trial counsel has not been ineffective for failing to make an argument, appellate counsel cannot be found ineffective for failing to make the same argument. 2018 WL 6272861 ¶ 68 (citing *People v. Enis*, 743 N.E. 2d 1, 14 (2000)); *see also Smith*, 528 U.S. at 285 (2000). Sinico's claims that his trial and appellate counsel were ineffective for failing to tender the accomplice jury instruction fail together.

### C. Certificate of Appealability

In order to appeal a denial of a habeas petition, a petitioner must first obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); *Jennings v. Stephens*, 574 U.S. 271, 275 (2015). A certificate may issue only when the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Jennings*, 574 U.S. at 282. The substantial showing "standard is met when reasonable jurists could debate whether ... the petition should have been resolved in a different manner." *Welch v. United States*, 136 S. Ct. 1257, 1263 (2016) (cleaned up). For the reasons discussed in this opinion, Sinico has not made that showing. His petition is clearly untimely under the key Seventh Circuit case. Even if it were timely, the Illinois Appellate Court's rejection of his ineffective assistance claims quite plainly cannot be deemed unreasonable applications of federal law. No certificate of appealability shall issue from this Court.

19

### IV. Conclusion

The habeas petition is dismissed as untimely. In the alternative, the petition would be denied on the merits even if timely filed. The Court declines to issue a certificate of appealability. The tracking status hearing scheduled for September 24, 2021 is vacated. Final judgment shall be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 21, 2021